UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 11-70-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RONALD E. WEINLAND, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

The parties to this action have filed several motions *in limine* [Record Nos. 31, 32, 33, 34, and 35]. The Court issued its ruling on two of these motions [Record Nos. 32 and 33] in a prior written opinion [Record No. 42], and conducted a hearing on the remaining motions on this date. In light of the written responses, which have all now been filed, and upon hearing from the parties, the Court will proceed to resolve an issue raised in the first motion *in limine* of the United States [Record. No. 34] regarding the testimony of Norman Williams.

**I.**

The United States has moved the Court to exclude the proposed expert opinion testimony of the following defense witnesses: Norman Williams, Taylor Trusty, and David or Douglas Schoepf. [Record No. 34] The United States argues that the Court should exclude Mr. Williams' proposed expert testimony because he is not qualified to testify to a matter relevant to the case. [*Id.*, p. 5] Only the government's objection to the proposed testimony of Norman Williams will be addressed herein.

According to the notice provided by the Defendant [*see* Record No. 34-1], Williams is expected to testify that the methodology used by the government to determine alleged unreported income was inadequate and improper because it did not encompass the necessary investigation regarding the purpose of the transactions at issue. [*Id.*, p. 1] Williams is also expected to testify that the Defendant and his wife had a methodology to review and characterize their expenses, and that such method was reasonable under the "accountable plan rules." [*Id.*, p. 2] Williams' proposed testimony also includes verification that the financial records of Defendant reflect that the amounts transferred from church accounts to personal accounts of the Defendant correspond to Defendant's determinations of the purpose of those expenses. [*Id.*] The United States argues that the Court should exclude Williams' proposed testimony because he is "not qualified by knowledge, skill, experience, training, or education and because [his] testimony is irrelevant and unreliable, pursuant to Federal Rules of Evidence 401, 402, 403, and 702." [Record No. 34, p. 1]

### A. Standard of Review

Federal Rule of Evidence 702 governs the admission of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule, amended in 2000, reflects the Supreme Court's opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, including *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (citing the Advisory Committee Notes to the 2000 Amendments, noting that "[i]n *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science"). The Sixth Circuit further explained in *In re Scrap Metal* that a proposed expert's opinion is admissible, at the discretion of the district court, when it satisfies three requirements: (1) the witness must be qualified by "knowledge, skill, experience, training, or education"; (2) the expert's testimony must be relevant, meaning that "it will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the testimony must be reliable. 527 F.3d at 528-29 (citing Fed. R. Evid. 702). The proponent of the expert testimony must establish its admissibility pursuant to Rule 702 by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

  **B.**  **Williams' Qualification as an Expert Witness**

  Williams has approximately 26 years of experience as a Special Agent with the Criminal Investigation Division of the IRS, including 13 years as a Supervisory Special Agent. [Record No. 34-1, p. 3] His curriculum vitae reflects that in these roles, he conducted and reviewed detailed financial interviews, accounting and financial records analyses, determinations of net worth and sources and applications of funds and computations of taxable income. [*Id.*, p. 8]

Additionally, he prepared, reviewed, and edited numerous financial investigative reports summarizing evidence of criminal violations. [*Id.*] As a Supervisory Special Agent, Williams personally supervised all financial investigations conducted by 12-15 special agents and made financial training presentations to investigative agencies, commercial bankers, and regulatory agencies. [*Id.*] Upon leaving the IRS in 1999, Williams assumed the role of Chief Executive Officer of Williams Financial Investigations, LLC, through which he provides financial consultation and investigation services. [*Id.*, p.7]

In its motion, the United States concedes that Williams "has dedicated countless hours to learning and enforcing IRS criminal investigative techniques," but contests that his experience amounts to "an expertise in this area." [Record No. 34, pp. 5-6] The United States highlights the absence of any evidence to demonstrate that Williams' "has ever written or spoken professionally on any of the issues on which he seeks to offer testimony." [*Id.*, p. 6] Further, the United States contends that Williams' relevant experience is stale. The government points out that Williams ceased work with the IRS in 1999, and that in the past thirteen years since Williams left the agency, IRS training, administrative guidance, and practice has changed. [*Id.*]

In his response, the Defendant argues that Williams' experience is sufficient to qualify him as an expert pursuant to Rule 702. The plain text of this rule provides that experience alone *may* be enough to qualify a witness as an expert. *See* Fed. R. Evid. 702, Advisory Committee's Notes to the 2000 Amendments (noting that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience"). However, the Sixth Circuit has clarified that "'may' does not mean 'must.'" *United States v. Cunningham*, – F. 3d –, Nos. 09-5987, 09-

5998, 2012 WL 1500180, at *18 (6th Cir. May 1, 2012). "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience." *Id.*; *see also Kumho*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized expertise."). The present inquiry, then, is whether Williams' experience as a Special Agent and as Chief Executive Officer of Williams Financial Investigations, LLC is sufficiently "extensive and specialized" to qualify him as an expert on IRS criminal investigations, financial record-keeping, and the "accountable plan" rules. *Kumho*, 526 U.S. at 156.

It is not disputed that Williams has extensive experience as a Special Agent in the IRS Criminal Investigation Division or that he has provided comprehensive financial investigation services through his business since leaving the IRS in 1999. Based upon the information that has been provided at this point, it would not be appropriate to exclude Williams' proposed testimony *in limine* for lack of qualifications.

### C. Relevance and Reliability of Expert Testimony

The United States argues that if Williams is found to be qualified to testify as an expert, the Court should exclude his proposed testimony regarding: (1) the nature of the government's investigation; (2) Defendant's record-keeping practices; and (3) Defendant's acts of transferring money between personal and church bank accounts in accord with his determination of how the expenses should be characterized. [Record No. 34, pp. 6-7] The government contends that Williams' proposed testimony regarding these three issues is irrelevant and unreliable. [*Id.*] "In making these dual determinations, the district court acts 'in the role of gatekeeper and must

evaluat[e] the relevance and reliability of proffered expert testimony with heightened care.'" *Cunningham*, 2012 WL 1500180, at *19 (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007)).

When assessing the reliability of proffered expert testimony, "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho*, 526 U.S. at 142. In *Daubert*, the Supreme Court suggested a non-exclusive list of factors for district courts to consider in evaluating whether proposed scientific expert testimony is sufficiently reliable. *Daubert*, 509 U.S. at 593-94. These factors include: (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error; and (4) general acceptance. *Id.* The Supreme Court clarified in *Kumho* that the district court's gatekeeper function applies to all expert testimony offered under Rule 702, "regardless of whether such testimony is based upon scientific, technical, or other specialized knowledge." *First Tenn. Bank, Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (citing *Kumho*, 526 U.S. at 141). The *Kumho* Court held that district courts may consider the factors set forth in *Daubert* when assessing the reliability of all types of expert testimony, although these factors may not be pertinent in all cases. *Id.* (citing *Kumho*, 526 U.S. at 149-50). The Sixth Circuit has also recognized that the *Daubert* factors "may be of limited utility in the context of non-scientific expert testimony." *Id.* at 334-35 (affirming district court's admission of experience-based expert opinion testimony not subjected to peer review and whose validity had not been confirmed through empirical analysis, noting that "[o]pinions formed [from

practical experiences] do not easily lend themselves to scholarly review or to traditional scientific evaluation"). Ultimately, "[t]he task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal*, 527 F.3d at 529-30.

First, the United States argues that the Court should exclude Williams' proposed testimony regarding the government's investigation because it fails to satisfy any of the guideline factors suggested in *Daubert*. The government initially contends that because there is no single acceptable way to conduct a criminal investigation, Williams' methods cannot be tested against those employed by the IRS in this case. Additionally, Williams does not cite any written source to establish a generally accepted method of conducting an investigation, nor does he discuss the rate of error associated with either approach. [Record No. 34, p. 7] The Defendant provided notice that Williams' proposed testimony would assert that the methodology used by the government in determining the amount of unreported income was "inadequate and improper." [Record No. 34-1, p. 1] In his response, the Defendant highlights that the United States has already identified its method of proof in this case as the specific item method, and that Williams' testimony will draw from his 26 years of experience and from the policies and procedures governing such an investigation in the Internal Revenue Manual.

The United States contends that "Williams' failure to rely on objective measures and accepted methodologies is particularly problematic in this instance" because while under Williams' supervision, Special Agent Susan Palmisano filed an EEOC claim against him

alleging gender discrimination. [Record No. 34, pp. 7-8] This complaint, made in 1999, does not necessarily render Williams' testimony unreliable or unsupported. And contrary to the assertion of the United States, the potential for jury confusion is not obvious. As stated by the Defendant in his response, the impact of this complaint on Williams' proposed testimony "is a matter best left for the government to address through cross-examination." [Record No. 45, p. 5]

The United States further argues that Williams' proposed testimony on this matter fails to meet the requirements of Rule 702 because it is irrelevant. [Record No. 34, p. 8] A threshold requirement for admissibility of expert testimony, as with all evidence, is that it is relevant. *See* Fed. R. Evid. 401, 402. Expert testimony is relevant under Rule 702 if it "will assist the trier of fact to understand the evidence or determine a fact in issue." *In re Scrap Metal*, 527 F.3d at 529; *see Daubert*, 509 U.S. at 597 (holding that the testimony of an expert witness must be "relevant to the task at hand"). The United States' motion urges the Court to exclude Williams' proffered testimony regarding the quality of the government's investigative techniques, arguing that it is irrelevant as it would not assist the trier of fact. [Record No. 34, p. 8 (citing *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994))] In support, the government cites the Sixth Circuit's decision in *Veal* affirming the district court's exclusion of evidence regarding the quality of the government's investigation as irrelevant, finding that the jury was not "called upon to determine whether the government's investigation had been good or bad." 23 F.3d at 989. As in *Veal*, the jury here will not be charged with determining the overall quality of the IRS investigation process. Therefore, Williams' proposed testimony on this limited subject is not relevant to the

issues to be presented to the jury for resolution. Challenges to the adequacy of the investigation and its alignment with IRS policies and procedures can be readily accomplished through cross-examination.

Second, the United States asserts that Williams' proposed testimony regarding Defendant's record-keeping practices is irrelevant under Rule 401 because the United States does not dispute that Defendant employed such methodology. [Record No. 34, p. 8] Rather, it argues, "the issue to be decided at trial is whether the Defendant willfully characterized personal expenses as business expenses so as to evade paying income taxes," and whether Defendant employed a method to distinguish these expenses does not have a tendency to make the existence of a fact of consequence more or less probable. [*Id.*] Though not addressed by the United States in its motion, the notice furnished by Defendant also states that Williams is expected to testify regarding the "accountable plan rules" and that, under these rules, Defendant's chosen methodology was reasonable. [Record No. 34-1, p. 2]

The third and final subject of Williams' proposed testimony that the United States requests be excluded is the testimony regarding amounts transferred by Defendant from church accounts to his personal account, and that the transfers align with Defendant's recorded characterization of expenses. [Record No. 34, p. 9] The United States asserts that this testimony is irrelevant because the government does not "challenge the fact that the Defendant's transference of money between church and personal accounts corresponds with *his* determination of what were legitimate business expenses," but rather challenges those underlying determinations. [*Id.*]

The United States suggests that Defendant is attempting to use this testimony of Williams as a "thinly veiled attempt to confuse the jury and bolster the Defendant's credibility to improperly support an inference the Defendant did not inten[d] to evade income taxes." [*Id.*] To the extent that Williams' testimony is being used as a vehicle to present expert opinion evidence as to an ultimate issue — *e.g.,* the Defendant's intent — this testimony is improper and will be excluded. As argued by the United States during the hearing on this motion, Federal Rule of Evidence 704(b) prohibits an expert witness from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Accordingly, Williams may not state an opinion at trial regarding the Defendant's intent, whether drawn from his own review of the records or from conversation with the Defendant and Defendant's wife. However, Williams' testimony based upon his personal observation and review of Defendant's records, and his expert opinion as to the reasonableness of Defendant's record-keeping practices, may be relevant and, therefore, will not be excluded *in limine*.

## II.

Based on the foregoing analysis, it is hereby

**ORDERED** that the United States' motion *in limine* regarding the proposed expert testimony of Norman Williams [Record No. 34] is **GRANTED** with respect to testimony regarding the quality of the government's investigation. The motion is **DENIED** with respect to Williams' proposed testimony concerning Defendant's record-keeping practices and transfers

of money to the extent that such testimony is based on Williams' review of relevant documents and records in light of his specialized knowledge.

This 30th day of May, 2012.

Signed By:
*Danny C. Reeves* DCR
United States District Judge